Jeffrey P. Kaufman, ISB No. 8022
Office of Kathleen A. McCallister,
    Chapter 13 Trustee
P.O. Box 1150
Meridian, ID 83680
(208) 922-5100 - Telephone
(208) 922-5599 - Facsimile
jpk@kam13trustee.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| In re:<br>SCOTT WILLIAM JENSEN,<br>                Debtor. | Case No. 24-40317-NGH<br>Chapter 13 |
|---|---|

**SUPPLEMENT TO TRUSTEE'S MOTION FOR SANCTIONS**

      COMES NOW Kathleen A. McCallister, standing Chapter 13 Trustee for the United States Bankruptcy Court for the District of Idaho, by and through her attorney, and hereby supplements her Motion for Sanctions ("Motion") with the following:

**I.**
**BACKGROUND**

    **1.**    Trustee served her Motion for Sanctions on Mr. Aaron Tolson ("Counsel") on July 11, 2024, via Counsel's ecf email. Trustee did not at that time file her motion with Court and provided Mr. Tolson with the Rule 9011(c)(1) 21-day safe harbor period.

    **2.**    Trustee has since filed the Motion with the Court and this Supplement accompanies that Motion for the reasons stated herein.

    **3.**    During the safe harbor period, Debtor filed Amended Schedules A/B, C, D, G, H, I, & J, an Amended Statement of Financial Affairs ("Am. SOFA") and an Amended Plan. Docket Nos. 29, 31, & 35. Because not all issues raised in the Motion were appropriately

corrected, trustee filed the Motion. So to not prejudice Counsel with a motion different than the one previously served on him, Trustee made no any changes to the Motion before filing it.

**4.** Trustee provides this Supplement to describe what Debtor changed and did not change in the amended schedules, SOFA, and plan.

## II.
## CHANGES TO SCHEDULES

**5.** As an initial matter, when Debtor amended his Schedules, he failed to abide by Local Rule 1009-1(a). Debtor failed to provide any explanation as what was changed or added and the amended schedules were not limited to just what was changed or added. Trustee understand this mistake is not critical, but it reflects Counsel's lackadaisical regard for the Court's rules and procedures.

**6.** On July 25, two days after the scheduled First Meeting of Creditors, Debtor filed his Amended Schedules A/B, C, D, G, H, I, & J. Docket No. 29. Trustee was able to discern the following changes:

    **a.** Sch. A/B, Line 1.2 – Debtor disclosed his interest in the Edgewood Residence.

    **b.** Sch. A/B, Line 3.1 – Debtor adjusted the model of his 2023 Chevrolet from a Silverado to a Sorento. The problem with this change is that Debtor does not own a Sorento. In fact, Chevrolet does not even make a Sorento – Kia does. GM Financial Leasing filed its claim, Claim No. 2, on June 17th, indicating Debtor is leasing a 2023 Chevrolet Silverado. It's unclear why Debtor made this change.

**24-40317-NGH | In re Jensen**
**SUPPLEMENT TO TRUSTEE'S MOTION FOR SANCTIONS**      **Page 2**

  **c.** Sch. A/B, Line 17 – Debtor disclosed six additional financial accounts (a savings and a checking account each at three different institutions).

  **d.** Sch. A/B, Line 33 – Debtor disclosed a $125,000.00 claim against a third party described as: "Alliance title [sic] was the contractor that Scott hired. The contractor took from Scott without his knowing." There are several problems with this change. First, Alliance Title is a title insurance and escrow company, it is not a contractor. Thus, Debtor did not hire Alliance Title as a contractor to provide construction services, it was hired for escrow services. While Debtor may have a claim against Alliance Title for the unauthorized disbursement of Debtor's funds, the description is incomplete as to the identity of the actual construction contractor with whom Debtor contracted. At his First Meeting of Creditors, Debtor testified that the actual contractor with whom he contracted was Spencer Allred of LSA Homes. It's unclear why Debtor did not include his claim against Spencer Allred and/or LSA Homes on his Amended Schedule A/B.

  **e.** Sch. D, Line 2.1 – Debtor changed the description of the property that secures the claim to: "2023 Chevy Sorento - $52,741.33 Chevy lease **Being paid through Scott's business." This is not a secured debt. It is a lease and this claim should have been removed from Schedule D entirely.

  **f.** Sch. D, Line 2.3 – Debtor added to the end of description of the property that secures the claim the following: "Subaru – Leased." Again, this is a lease, not a secured debt, and should have been removed from Schedule D.

  **g.** Sch. D, Line 2.5 – Debtor changed the description of the property that secures the claim from "- $0.00 Son's House. They co-signed it. The son makes the

payments. 23,000 monthly payments" to "4216 EDGEWOOD CIR AMMON ID 83406 - $0.00 Son's House.  Scott and his wife co-signed it.  The son makes the payments."

  **h.** Sch. G, Lines 2.1 & 2.2 – Debtor added Jpmcb Auto and Tadd Jenkins Chevrolet as the lessors of the 2022 Subaru and 2023 Chevy Sorento, respectively.

  **i.** Sch. H, Line 2 – Debtor disclosed Gina Jensen as his spouse with whom he lives in a community property state.

  **j.** Sch. H, Line 3.1 – Debtor added his spouse as a co-debtor for the debt listed on Line 2.6 of the Amended Schedule D – US Bank, secured by a second mortgage on Debtor's residence (which was also marked on Schedule D as a debt solely owed by Debtor).  The US Bank 1st mortgage debt and the Phl obligation were not included.

  **k.** Sch. H, Line 3.2 – Debtor added Kyle Jenkins as a co-debtor for the debt listed on Line 2.5 of the Schedule D – Phl, secured by the Edgewood Residence (which was also marked on Amended Schedule D as a debt solely owed by Debtor, even though the description of the property securing the debt advises that Gina Jensen is liable on this debt as well).

  **l.** Sch. I – Debtor added that he has been employed by H2O Power Wash & Steam, Inc ("PWS") for over 30 years.  Debtor also revised his wife's income to reflect that her monthly "take-home pay" decreased from $3,204.98 to $3,015.48.

  **m.** Sch J – Debtor added his Mother-n-law [sic] as a dependent.  Debtor also adjusted his mortgage payment from $4,320.61 to $3,300.00 (even though according US Bank's two proofs of claim, Debtor's combined 1st & 2nd mortgage payment is $3,472.77).  Claims Nos. 6 & 9.  Debtor made other various adjustments to his budget;

notably, Debtor's medical expenses decreased from $3,144 to $264. Also, Debtor removed the two vehicle lease payments from Schedule J (as his business pays them). The net change to Debtor's budget is that it now shows Debtor can afford the $700 plan payment he proposes.

### III.
### CHANGES TO SOFA

**7.** On July 25th, Debtor filed his Amended SOFA. Docket No. 31. Trustee was able to discern the following changes to Debtor's Amended SOFA:

    **a.** Q. 6 – Debtor disclosed that in 2023 he received income from his son in the form of his son making payments on the Edgewood Residence mortgage. It's unclear why Debtor did not include 2022 or 2024 YTD numbers.

    **b.** Q. 7 – Debtor added the payments he made to US Bank on his 1st and 2nd mortgage in the 90 days immediately preceding the June 12th Petition date.

    **c.** Q. 9 – Debtor disclosed he was involved in court action in the one year immediately preceding the June 12th Petition date.

    **d.** Q. 18 – Debtor disclosed that on July 14, 2024 (32 days after he filed his case), he transferred his 2017 Yamaha Viking to Kyle Jensen, listed as his brother (Trustee believes the true recipient of the transfer was actually Kirk Jensen, whom, according to the Bonneville County tax records, lives at the 4672 E. Spear Point address, which is contiguous to Debtor's Black Hawk Residence).

    **e.** Q.27 – Debtor disclosed that within the 4 years before he filed his case, he had been an officer, director, or managing executive of a corporation, and that such

24-40317-NGH | In re Jensen
**SUPPLEMENT TO TRUSTEE'S MOTION FOR SANCTIONS**　　　　　　　　　　　　　　　　Page 5

business is PWS. Debtor did not check the box to indicate that he owned of at least 5% of the voting or equity securities of a corporation. But he did note that the business has been operating from 1994 to current and described the nature of the business as: "Concrete pressure washer. Scott owns the company out fully. He use [sic] to have a partner but he bought it out about 15 years ago. the [sic] worth of the company is about $80,000[.]"

## IV.
## CHANGES TO DEBTOR'S PLAN

**8.** On July 30th, Debtor filed his Amended Plan. Debtor made the following changes:

    **a.** In ¶ 2.1 – Debtor reduced his monthly plan payment from $1,000 to $700.

    **b.** In ¶¶ 3.1 & 6.1 – Debtor provided for the Jpmcb Auto's and GM Financial's vehicle leases now in ¶ 6.1 instead of ¶ 3.1.

    **c.** In ¶ 4.4 – Debtor now provides for $4,728 in priority tax claims.

## V.
## REMAINING AND ADDITIONAL DEFICIENCIES

**9.** Debtor has still yet to comply with § 521(a)(1)(B)(iv) and Rule 1007(b)(1)(E) as he has not uploaded copies of the pay advices he received in the 60 days immediately preceding the petition date.

**10.** Counsel has still failed to comply with this Court's ECF Procedure Rule 13.B. The wet signatures of Debtor's Petition, Schedules and Statement of Financial Affairs do not match the electronic signatures on said documents. The wet signatures are dated April 22nd, yet the electronic signatures are dated May 23rd. To comply with Rule 13.B, Counsel needs to

upload the wet signatures that support the May 23rd electronic signatures. This case has been pending for eight weeks and Counsel has yet file to the appropriate wet signature pages. No excuse for this delay has been proffered by Counsel.

11. Debtor's Form 122C-1 & 2 have remain uncorrected. Debtor filed two Form 122C-1s. Docket Nos. 7 & 13.[1] While the numbers on the documents are identical, they have two different signatures. Docket 7 contains Debtor's wet signature, dated April 22nd. Docket No. 13 contains Debtor's electronic signature, dated May 23rd. This presents an issue because the two documents are ostensibly signed a month apart yet the income numbers are identical. Trustee has yet to verify Debtor's Current Monthly Income, but finds it remarkable that Debtor's current monthly income did not change from the time Debtor originally signed it in April to when the case was filed in June, especially considering the Form 122C-1 to reflect the income Debtor received during the December 1, 2023 through May 31, 2024 time period.

12. Debtor also filed two different Form 122C-2s. Docket Nos. 12 & 14.[2] Docket No. 14 appears to have been prepared using UST allowances for cases filed on or after May 15, 2024, whereas Docket No. 12 used the prior UST allowanced (for 4/1/2014 – 5/14/2024).[3] Using the numbers from Docket No. 14, Debtor purports to have -$1,827.38 in monthly disposable income. However, Debtor takes improper deductions on his Form 122C-2. Debtor deducts $3,144 for medical costs which he now lists at $264 on his Schedule J (a difference of $2,880). Further, Debtor has testified that his son makes the mortgage payment to Phl, thus he should

---

[1] The Docket reflects that the Clerk's Notice that Docket 13 was a duplicate of Docket No. 7 has been removed.
[2] The Docket reflects that the Clerk's Notice that Docket 14 was a duplicate of Docket No. 12 has been removed.
[3] Additionally, Docket No. 12 was signed with a wet signature on April 22nd whereas Docket No. 14 was electronically signed on May 23rd.

**24-40317-NGH | In re Jensen**
**SUPPLEMENT TO TRUSTEE'S MOTION FOR SANCTIONS**                                                      Page 7

either include the $2,317 payment as income on his Form 122C-1 or remove the expense form Line 33d.  Also, Debtor does not make the payment to Yamahamotofn; it's been paid and Debtor has even transferred title to the asset to either Kyle or Kirk Jensen; Debtor should therefore remove the $254 from Line 33d.  Just making these changes alone increases Debtor's monthly disposable income to $3,623.62.  However, Trustee recognizes that Debtor did not take his standard living allowances ($1,677 for a household of 3), his out-of-pocket health care allowance (which could reduce or offset entirely the $264 listed for medical expenses on Line 22), or his housing insurance and operating allowance ($654 for a household of 3).  Taking into account the standard living and housing allowances, Debtor's monthly disposable income may be closer to $1,292.62.[4]  To the detriment of Debtor's unsecured creditors, Counsel included in Debtor's disposable monthly income calculations expenses Counsel knew Debtor was not paying[5], or failed to include as income such expenses being paid by third parties.

13.    Debtor amended his plan and reduced his payment from $1,000 to $700.  As amended, Debtor's plan now proposed to pay nonpriority unsecured creditors $28,072 instead of the $49,000 originally proposed.  The amended plan fails to provide for the $730.21 in mortgage arrears owed to US Bank (Claim No. 9, filed on July 2, 2024).  More importantly, though is that Debtor just filed an Am. SOFA in which he describes owning PWS and that its worth approximately $80,000 and then amends his plan to his creditors only $28,072.

---

[4] This assumes no changes to Debtors current monthly income.  Also, Trustee still questions whether Debtor may take a vehicle allowance for the Polaris Razor as she has not confirmed the vehicle may be legally driven on a highway.
[5] Debtor's original Schedule D disclosed that Debtor's son was making the Phl payment and that his brother was making the Yamahamotofn payment.

**24-40317-NGH | In re Jensen**
**SUPPLEMENT TO TRUSTEE'S MOTION FOR SANCTIONS**                                                                 Page 8

14. Debtor still did not include on his Amended Schedule A/B his interest in PWS. Debtor, his counsel, and Trustee met for a business meeting on July 18th in which Debtor and Trustee discussed Debtor's interest in PWS. Debtor testified at his First Meeting that he had an interest in PWS and owned all its stock. It's unclear why Debtor's Amended Schedule A/B did not disclose the asset. Trustee recognizes that Debtor disclosed on his Am. SOFA that he owned PWS, but disclosing an asset on the SOFA is not equivalent to disclosing it on Debtor's Schedules. *In re Stevens*, 617 B.R. 328, 332-33 (9th Cir. BAP 2020). This is no minor slight. Debtor testified at his First Meeting that he advised his attorney prior to filing that he "did not want to include his business in his bankruptcy." Regardless of the exact meaning of that sentiment, it is incumbent upon Counsel, as an officer of court, to file with the Court Schedules that do not omit assets in which Counsel knows Debtor to have an interest. Otherwise, Counsel is assisting Debtor in filing false documents. *In re Kayne*, 453 B.R. 372, 383 (9th Cir. BAP 2011).

## VI.
## SUMMARY

15. In sum, while Counsel assisted Debtor in correcting some of the issues raised in the Motion, not all issues were corrected, some only haphazardly corrected (i.e., Debtor's description of his claim against Alliance Title or his failure to identify all the debts for which Gina Jensen is a co-debtor on his Schedule H), and some new issues were raised (is Debtor leasing a Silverado or a Sorento?). Overall Trustee believes that the actions taken by Counsel during the safe harbor period did not cure his Rule 9011 shortcomings as outlined in the Motion.

//

Dated: August 7, 2024.  OFFICE OF KATHLEEN A. McCALLISTER,
CHAPTER 13 TRUSTEE

By: */s/ Jeffrey P. Kaufman*
Jeffrey P. Kaufman,
Attorney for Chapter 13 Trustee